DINNY & ROBBINS, INC., Appellant, *v.* ALFRED S. DAVIS, as Treasurer of Retail Shoe Salesmen's Union, Local 1115-F, Respondent, et al., Defendants.

Argued January 14, 1943; decided March 4, 1943.

*Samuel J. Robbins* and *Sidney O. Raphael* for appellant.

*Simon J. Liebowitz* and *Leon Reich* for respondent.

RIPPEY, J.  Plaintiff in this action is a retailer of men's shoes operating three stores in the city of New York, one of which is located at 484 Seventh avenue.  It brought this action to restrain alleged illegal picketing by the defendant on and subsequent to January 12, 1942, claiming that the picketing was not the result of any " labor dispute " within the meaning of section 876-a of the Civil Practice Act.

The trial court made findings of fact and conclusions of law upon which it based a judgment restraining the defendant from carrying a particular sign in connection with the picketing. The judgment, however, did not restrain picketing provided

there was a modification of the sign which pickets were carrying. The Appellate Division, by a vote of three to two, reversed all of the findings of fact and conclusions of law of the trial court and made new findings of fact and conclusions of law in place thereof. The new findings were such only as the court deemed necessary to sustain its conclusion that by the facts alleged in the complaint and sustained by the evidence a labor dispute existed between the parties within the meaning of section 876-a of the Civil Practice Act and that the allegations of the complaint and the proofs indicated that there had been no compliance with the conditions specified in that section as precedent to the maintenance of the action and, as a consequence, the complaint must be dismissed. The new findings of fact made by the Appellate Division were in all essential particulars the same as those found by the trial court except as to one finding of the trial court to which attention will be called later and that was in fact a conclusion of law. Accordingly, the reversal was actually upon the law and the question of law passed upon is whether there was a '' labor dispute '' between the parties within the meaning of section 876-a.

Preliminary to further reference to that question, we repeat that there was no prohibition by the trial court in this action of lawful picketing. The trial court found that on January 12, 1942, and hereafter, the defendants and persons designated by them picketed the store of plaintiff by one picket who paraded in front of the premises carrying a placard bearing the words, '' Dinny & Robbins shoes are unfair to the Retail Shoe Salesmen's Union Local 1115-F — R.C.I.P.A., American Federation of Labor,'' which picketing '' was misleading to the general public and the customers of the plaintiff in that they were led to believe that the employees of the plaintiff were on strike, and that the plaintiff was unfair to organized labor.'' The Appellate Division found, as did the trial court, that there was no mass picketing, and that there was no violence in the course of picketing, that it was peaceful at all times and that the picket made no verbal statements, and further found that no statement was made by the picket that any of plaintiff's employees were on strike '' except by implication.'' That, of course, was the same finding as made by the trial court. The judgment of the trial court provides that the defendant should be permitted to picket with a sign which should read as follows: '' This is no strike.

All employees of Dinny & Robbins, Inc., are regular members of Local 1268 C.I.O., not members of Local 1115-F — R.C.I.P.A., A. F. of L.'' The trial court correctly found, as did the Appellate Division, that there was an implication by the sign which the picket carried that the employees of plaintiff were on strike. The judgment of the trial court also was to the effect that the sign indicated that plaintiff was unfair to organized labor and that finding, although it was the single case where the Appellate Division did not concur, was sustained by the evidence. The judgment restraining the use of such a sign was in all respects correct (*Angelos* v. *Mesevich,* 289 N. Y. 498). The statement on the sign that the plaintiff was unfair to Retail Shoe Salesmen's Union, Local 1115-F, R.C.I.P.A., American Federation of Labor, was false since there was no obligation on the part of plaintiff to enter into a contract with the defendant, as hereafter pointed out.

On October 1, 1941, the plaintiff, as a result of collective bargaining, entered into a comprehensive written contract with Retail Shoe Salesmen's Union of New York, Local 1268, chartered by the United Retail, Wholesale and Department Store Employees of America, affiliated with the Congress of Industrial Organizations, which was in full force and effect at the time of the picketing and was to be continued in effect by its terms until October 1, 1942. It covered in detail wages and working conditions of its employees. The contract followed at least two similar contracts with the same organization, each for a yearly period. No complaint at any time was made by the defendant in regard to the validity and comprehensive character of the agreement or that there were any matters affecting wages and working conditions which were not effectively arranged for in the contract. Counsel for defendant, upon the trial, specifically disclaimed that the plaintiff was unfair to labor generally and asserted that the defendant's sole claim was '' that this plaintiff is unfair to Local 1115-F.'' The findings below were to the effect that that union was engaged in the same field as the defendant union; that the C.I.O. unions were picketing stores employing members of the defendant union and that the defendant union had notified the plaintiff to execute a proposed contract with it within three days, to which notice plaintiff paid no attention, and that, in retaliation, the picketing of plaintiff's store began. In other words, it has been held that, in spite of

the undisputed facts that no strike had been called against the plaintiff, there was no pretense or claim on the part of defendant union that picketing of plaintiff's store was a *bona fide* attempt at collective bargaining with the object of increasing wages or bettering the working conditions of plaintiff's employees, and that plaintiff in good faith had entered into and was operating under a binding contract with the C.I.O. union, by the simple demand alone on the part of the defendant that plaintiff abrogate its contract with the C.I.O. union and enter into a contract it proposed, a labor dispute existed within the meaning and intent of section 876-a of the Civil Practice Act.

There is nothing that can be found in that section or in the purposes for which it was enacted to indicate any intent on the part of the Legislature that it should cover a retaliatory jurisdictional dispute between two rival unions where no strike existed against an employer and there was no complaint concerning terms or conditions of employment or employment relations arising out of the respective interests of employer and employee and no attempt had been made to organize such employees. That act was not designed as an instrument to promote and protect strife between rival labor groups or to injure or destroy the good will and business of innocent employers against whom there was no complaint concerning wages or working conditions solely because they refused to take sides with one group as against the other. There is nothing in the act to bar a court of equity from restraining irreparable injury to property and business of an innocent employer against a build-up of an alleged " labor dispute " such as is indicated in this case. The act does not compel courts of equity to force the breach of a valid contract between an employer and its employees satisfactorily covering wages and working conditions of such employees when made as a result of collective bargaining (*Florsheim Shoe Store·Co.* v. *Retail Shoe Salesmen's Union,* 288 N. Y. 188) and to suffer suits for damages for its breach. On the contrary, the Legislature provided in the State Labor Relations Act a due and an orderly process for settling such jurisdictional disputes (Labor Law, art. 20).

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

DESMOND, J. (dissenting). Plaintiff concedes its failure to comply with section 876-a of the Civil Practice Act. The court, therefore, was entirely without jurisdiction to grant plaintiff any sort of injunction if the case is one " involving or growing out of a labor dispute." The existence of a labor dispute does not depend on the strength or weakness of a disputant's case, on his 'wisdom or folly, or on the views of any court as to the rights or wrongs of his position. By express definition of the Legislature, the term " labor dispute " includes " any controversy concerning * * * the association or representation of persons in negotiating * * * or seeking to arrange terms * * * of employment " (§ 876-a). Defendant union tendered to plaintiff employer a contract which the former refused to sign. That refusal, claims the union, was unfair. The employer denies that impeachment, pointing to the fact that it was already under contract to a rival union. Obviously and beyond doubt this was such a dispute as is encompassed within the above quoted definition, found in section 876-a, of a " labor dispute." The statute's flat prohibition of the issuance of an injunction in such a case, without pleading and proof required by the statute and concededly absent here, makes it unnecessary and improper for any court to investigate the merits of the dispute. There is simply no jurisdiction to issue the injunction.

Even if we could write section 876-a out of this case, we would still have to deal with our own decisions. Early and late, those decisions positively deny the right to issue an injunction against peaceful picketing by an ambitious union, though the employer has a subsisting contract with another union. (*Interborough R. T. Co.* v. *Lavin*, 247 N. Y. 65; *J. H. & S. Theatres, Inc.* v. *Fay*, 260 N. Y. 315; *Stillwell Theatre, Inc.* v. *Kaplan*, 259 N. Y. 405.) In the *Stillwell* case, which cannot be distinguished from the present case, Chief Judge POUND wrote: " We would be departing from established precedents if we upheld this injunction." (p. 412.) The established precedents of that day have since been reinforced by an express statutory prohibition.

The theory that defendant's peaceful picketing is unlawful because it amounts to a demand that the employer breach its contract with the other union, was expressly passed upon and repudiated by this court in *Stillwell Theatre, Inc.* v. *Kaplan* (*supra*) (259 N. Y. at page 412).

The trial court found that there was at no time more than one picket and that the activities of this picket were at no time violent or disorderly. The sign he carried announced to the public that plaintiff was " unfair " to defendant's branch of the Retail Salesmen's Union, American Federation of Labor. It did not say, as such signs often do, that plaintiff was unfair to " labor " or to " organized labor." The trial justice, during the trial, stated in a colloquy with counsel, that this sign was misleading as tending " to create the impression that they [plaintiff] are unfair to labor generally." For that reason, he twice told counsel during the trial, he considered it necessary to " dispel that impression " by *adding* to the picketing sign a further statement that plaintiff's employees were all members of the rival, or C. I. O., union. However, when the decision and judgment were entered, they ordered not that the explanatory statement be *added* to defendant's original plaint on its picketing sign, but that the statement suggested by the court be *substituted* for defendant's sign, and that no other kind of statement be made to the public. Even if the court had forbidden picketing unless its verbiage should be *added* to that of defendant on the sign; such an order would have been illegal, as held by this court in *Edjomac Amusement Corp.* v. *Empire State Motion Picture Operators' Union, Inc.* (273 N. Y. 647) where, in an identical case, we reversed an injunction order and dismissed the complaint. But when the court by refusing to allow any wording but its own, denied to the union its right to assert that plaintiff was unfair to it, there was the plainest violation of rules laid down by this court (*Nann* v. *Raimist*, 255 N. Y. 307, 319) and of defendant's right of free speech under the Federal Constitution (*Bakery & Pastry Drivers & Helpers Local 802* v. *Wohl*, 315 U. S. 769, 774, and cases therein cited).

The Appellate Division was correct in dismissing the complaint and its judgment should be affirmed, with costs.

LEHMAN, Ch. J. (dissenting). I concur in the opinion of DESMOND, J. The Constitution of the State of New York, and the Constitution of the United States guarantee freedom of speech and those guarantees are violated by censorship though exercised by a court with conscientious intent that no representations which in the opinion of the court distort the truth.

and no arguments which, in the opinion of the court, are specious, should induce the public to appraise the merits of a dispute in manner which ignores the economic axioms of the orthodox and the social philosophy of the respectable.

The judgment should be affirmed with costs.

FINCH, LEWIS and CONWAY, JJ., concur with RIPPEY, J.; DESMOND, J., dissents in opinion in which LEHMAN, Ch. J., and LOUGHRAN, J., concur; LEHMAN, Ch. J., concurs in dissenting opinion in separate memorandum.

Judgment accordingly. (See 290 N. Y. 745.)