THE EUCLID CANDY CO. OF NEW YORK, INC., Plaintiff, *v.* PAUL SUMMA, Individually and as President, DAVID H. GEFTER, Individually and as Treasurer of the Candy and Confectionery Workers Union, Local No. 452, Greater New York, A. F. of L., an Unincorporated Association of Seven or More Individuals, JAMES LANDRESCINA, Individually and as Business Manager, FRANK SCIDA, Individually and as Organizer, JOSEPH LA ROSA and Others, Individually and as Members of the Candy and Confectionery Workers Union, Local No. 452, Greater New York, A. F. of L., ROSE VIGORITO, Individually and as President of the Independent Confectionery Workers Union, and the CONFECTIONERY AND TOBACCO JOBBERS EMPLOYEES UNION, LOCAL No. 1175, A. F. of L., Defendants.

Supreme Court, Special Term, Kings County, March 26, 1940.

*Tenzer, Greenblatt, Fallon & Kaplan,* for the plaintiff.

*London, Simpson & London,* for the defendant Independent Confectionery Workers Union.

*Mark K. Leeds,* for the defendant Candy and Confectionery Workers Union, Local No. 452.

DALY, J. The plaintiff moves to enjoin *pendente lite* the officers and members of the Candy and Confectionery Workers Union, Local No. 452, Greater New York, A. F. of L., from calling or continuing a strike against plaintiff, picketing its premises, interfering with its business, officers, employees and customers, and for other relief.

Originally, there was a controversy between two unions, namely, the union against which relief is sought herein, which hereafter will be referred to as Local 452, and Independent Confectionery Workers Union, which hereafter will be referred to as the Independent Union, as to which should be the sole collective bargaining agent for plaintiff's employees. By an agreement dated February 15, 1940, to which the plaintiff and the two unions were parties, it was agreed that an election be held under the auspices of the National Labor Relations Board for the purpose of certifying the sole collective bargaining representative for the plaintiff's employees. It was 'there also provided that the union which the National Labor Relations Board certifies shall be recognized as the sole bargaining representative for plaintiff's employees, and that the two unions would exchange assurances of no strikes of one against the other during the term of the contract to be entered into between the plaintiff and the union certified. On February 21, 1940, said agreement was modified to the effect that the contract to be entered into by the certified union and the plaintiff should provide for a closed shop, to wit, " that all employees of Euclid will be required, during the period of said contract to become members of the Union certified * * * as the bargaining agency." On February 29, 1940, an election was held by secret ballot, and the National Labor Relations Board certified that the Independent Union had been designated by plaintiff's employees as their sole collective bargaining agency. Thereupon the plaintiff entered into negotiations with the union so certified, and an agreement was made and executed, dated March 6, 1940. This contract, in accordance with the closed shop provision of the agreement dated February 21, 1940, provided that " All employees * * * excepting clerical workers, etc., shall be members of the Union. Each employee who is not now a

member of the Union shall be required to join the Union within one week from the date of the execution of this agreement; and Euclid agrees that it will continue in its employ only members of the Union in good standing." In accordance with the terms of this contract, the following notice was posted on the bulletin board:

" Under the terms of the contract entered into on March 6th, 1940, with the Independent Confectionery Workers Union all employees of the Euclid who are not members of the above union are required to join on or before March 13, 1940.

" Please take further notice, that on March 14th, 1940, all employees will be required to show that they are members of the Independent Confectionery Workers Union, in good standing, before being permitted to report for work.

" THE MANAGEMENT."

Some thirty-one employees, members of Local 452, refused to comply, and went out on strike and began to picket the premises.

Upon this application the Independent Union has appeared and joined the plaintiff in its prayer for relief. It has filed an answer containing a cross-complaint against Local 452, in which it prays for injunctive relief restraining the local from unlawfully attempting to induce plaintiff to breach its aforesaid contract, and for other relief.

Although in the course of the oral argument counsel for Local 452 conceded that in this controversy no labor dispute, within the meaning of section 876-a of the Civil Practice Act, was involved, he nevertheless contends in his memorandum that the instant controversy is a labor dispute. Notwithstanding the broad language of the statute in defining a labor dispute, the controversy existing between the parties herein does not, in the court's opinion, come within the purview of said statute. There was a labor dispute prior to the certification by the National Labor Relations Board. This certification, following an election duly held by that Board pursuant to the agreements above referred to, brought that labor dispute to a conclusion. It would be anomalous, under these circumstances, to say that the labor dispute still exists merely because a minority of employees, apparently dissatisfied with the result (the National Labor certification), is unwilling to abide by the will of the majority. (Cf. *Oberman & Co., Inc.*, v. *United Garment Workers of America*, 21 F. Supp. 20; *Union Premier Food Stores, Inc.*, v. *Retail Food Clerks and Managers Union, Local No. 1357*, 98 F. [2d] 821; *Stalban* v. *Friedman*, 171 Misc. 106.) There being no labor dispute, the sole purpose of the minority union would seem to be to induce the breach of the contract which the certified union entered into with the plaintiff, and which contained the provision

for a closed shop, pursuant to the agreement entered into by both unions prior to the election. The plaintiff has thus been placed in a dilemma. If it accedes to the demands of the minority union, it breaches its contract with the certified union. If it attempts to abide by the terms of said contract, as it did in the instant case, it has a strike on its hands, and picketing and the other activities that go with it. It seems to the court that since the picketing by the minority union is, in effect, an attempt to force the breach of the agreement which was entered into under the circumstances above described, this court of equity should prevent the irreparable injury which flows therefrom.

Accordingly, the motion is granted in all respects, upon the plaintiff filing an undertaking in the sum of $1,000. This case will be preferred for trial on April 15, 1940, subject to the approval of the justice presiding. The plaintiff will serve a note of issue by April fifth, which the clerk is directed to accept upon the payment of the proper fees.